JESSICA K. PRIDE (SBN 249212)
jpride@pridelawfirm.com
DANTE PRIDE (SBN 262362)
dpride@pridelawfirm.com
ALFRED VON KESSLER IV (309453)
avk@pridelawfirm.com
THE PRIDE LAW FIRM
2831 Camino Del Rio S., Suite 104
San Diego, CA 92108
Telephone: (619) 516-8166
Facsimile: (619) 785-3414
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

J.O.,

     Plaintiff,

v.

UNITED STATES OF AMERICA
(FEDERAL BUREAU OF
PRISONS); JAY ALEXANDER;
and DOES 1-25, inclusive,

     Defendants.

CASE NO.  4:23-cv-3700

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

## INTRODUCTION

1.     Beginning in approximately 2022, Defendant JAY ALEXANDER ("ALEXANDER"), a medical employee at Federal Correctional Institution – Dublin ("FCI Dublin"), which was owned and operated by Defendant the United States of America (Federal Bureau of Prisons) ("United States"), sexually assaulted Plaintiff J.O., a minimum-security inmate, in violation of federal and state law.

2.     Beginning in approximately 2022, BALTIERRA or VALTIERRA (full name and spelling unknown at this time) ("BALTIERRA") (BALTIERRA will

1 be DOE 1 once his true full name is discovered), a correctional officer at FCI
2 Dublin, sexually assaulted Plaintiff J.O.

3   3. Congress enacted the Prison Rape Elimination Act in 2003, 34 U.S.C.
4 § 30301, *et seq.* ("PREA") to establish national standards for preventing precisely
5 this kind of sexual abuse from happening to federal inmates. Under PREA, the U.S.
6 Department of Justice promulgated detailed regulations that provide precise
7 procedures that prisons must follow. The Federal Bureau of Prisons ("BOP")
8 adopted PREA policies in response to these regulations.

9   4. Defendant ALEXANDER and BALTIERRA, repeatedly subjected
10 Plaintiff to sexual abuse. In doing so, Defendants violated Plaintiff's Constitutional
11 rights and California law on gender violence, sexual assault, and common law on
12 battery.

13   5. As a result of Defendants' actions, Plaintiff suffered numerous
14 emotional injuries and incurred severe personal injuries, which continue to affect
15 her today.

16   6. Plaintiff brings this civil action and asserts claims: (1) against
17 ALEXANDER and DOES 1-25, inclusive, under the Eighth Amendment's Cruel
18 and Unusual Punishment Clause (Excessive Force) and against ALEXANDER and
19 DOES 1-25, inclusive, under sexual assault statutes, including California's gender
20 violence statute (Civil Code §§ 52.4 and 1708.5); (2) against ALEXANDER and
21 Does 1-25, inclusive, under California's battery statute; and (4) against the United
22 States under the Federal Tort Claims Act (28 U.S.C. §§ 1346(b), 1671-2680)
23 ("FTCA") for various tort claims against all Defendants arising under California
24 common law committed within the course and scope of their federal office or
25 employment.

26   7. For these violations, Plaintiff seeks nominal, compensatory, and
27 punitive damages, attorneys' fees and costs, and any other relief that the Court
28 deems appropriate.

1

## JURISDICTION AND VENUE

2       8.      Plaintiff's claims arise under the United States Constitution, California

3   statutory law, California common law, and the FTCA. The Court has diversity

4   jurisdiction over Plaintiff's entire action under 28 U.S.C. § 1332 because Plaintiff

5   and Defendants are diverse in citizenship and more than $75,000 is in controversy.

6   The Court also has federal question jurisdiction over Plaintiff's Constitutional

7   claims and FTCA claims (which have been administratively exhausted) under 28

8   U.S.C. § 1331. And the Court has supplemental jurisdiction over Plaintiff's

9   California statutory and common-law claims under 28 U.S.C. § 1367 because these

10  state-law claims arise from a common nucleus of operative fact with Plaintiff's

11  federal question claims.

12      9.      The Court also has personal jurisdiction over Defendants. The Court

13  has general jurisdiction over Defendants because, on information and belief, each

14  Defendant is a citizen of, and domiciled in, California. The Court has specific

15  jurisdiction over Defendants because they committed the actions and omissions

16  forming the basis for each claim against them in California.

17      10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and

18  28 U.S.C. § 1402(b). As noted above, Defendants' actions and omissions that give

19  rise to Plaintiff's claims all occurred in this District, at FCI Dublin, located at 5701

20  8th St., Dublin, California 94568.

21

## INTRADISTRICT ASSIGNMENT

22      11.     Pursuant to Civil Local Rule 3-29(d), Plaintiff's action is properly

23  assigned to the San Francisco Division of this District because the action arises

24  from actions and omissions taken in Alameda County, California, where FCI

25  Dublin is located.

26

27

28

**PARTIES**

12.    Plaintiff is an individual and citizen of Stephens County, Oklahoma. During the relevant period, Plaintiff was incarcerated at FCI Dublin in Dublin, California.

13.    Upon information and belief, Defendant ALEXANDER is an individual and citizen of California, where he is domiciled. During the relevant period, ALEXANDER worked as a medical employee at FCI Dublin in the Bureau of Prison's (BOP's) employment. While performing the acts and omissions that Plaintiff alleges in this complaint, ALEXANDER was acting within the scope of his official employment, or with the BOP's permission and consent.

14.    Upon information and belief, Doe 1— BALTIERRA —is an individual and citizen of California, where he is domiciled. During the relevant period, BALTIERRA worked as correctional officer at FCI Dublin in the Bureau of Prison's (BOP's) employment. While performing the acts and omissions that Plaintiff alleges in this complaint, BALTIERRA was acting within the scope of his official employment, or with the BOP's permission and consent.

15.    Defendant United States is a governmental entity. During the relevant period, the United States, through the BOP, a federal agency, was in possession and control of FCI Dublin, a minimum-security federal prison located in Dublin, California. The United States has waived sovereign immunity as to Plaintiff's tort claims against Defendants, pursuant to FTCA, 28 U.S.C. § 2674.

16.    Plaintiff is ignorant as to the true names, identities, and capacities of Defendants DOES 1 through 25, inclusive. Therefore, Plaintiff sues these Defendants under the fictitious designation of DOES 1 through 25. Plaintiff will amend this Complaint once their identities have been ascertained as well as facts giving rise to their liability.

17.    Defendants Does 1-25, inclusive, individually and in their official capacities, at all times relevant herein, were correctional officers and/or employees

for the BOP, acting in their official capacity. These defendants include correctional officers in supervisory positions that participated in training ALEXANDER and BALTIERRA and other employees, in the supervision of ALEXANDER and BALTIERRA and other employees, and in reporting incidents of sexual abuse to the BOP.

## STATEMENT OF FACTS

**A.      PREA regulations provide mandatory procedures for preventing, reporting, investigating, and responding to reports of staff sexual abuse of an inmate**

18.      PREA regulations require the BOP to have a strict "written policy mandating zero tolerance toward all forms of sexual abuse and sexual harassment and outlining the [BOP's] approach to preventing, detecting, and responding to such conduct," which the BOP has adopted.[1]

19.      PREA regulations also comprehensively mandate that the BOP and its correctional staff follow certain policies and procedures when an inmate has allegedly suffered sexual abuse.

20.      First and foremost, the BOP "shall require all staff to report immediately" "any knowledge, suspicion, or information regarding an incident of sexual abuse" and "staff neglect or violation of responsibilities that may have contributed to an incident or retaliation."[2] "Apart from reporting to designated supervisors or officials, staff shall not reveal any information related to a sexual abuse report to anyone other than to the extent necessary, as specified in agency policy, to make treatment, investigation, and other security and management decisions."[3]

---

[1] *See* BOP Program Statement No. 5324.11, at 15 (Jan. 6, 2014); 28 C.F.R. § 115.11(b), (c).
[2] 28 C.F.R. § 115.61(a).
[3] *Id.* § 115.61(b)

21.    Regardless of whether a report of sexual abuse is made, if an inmate is "subject to a substantial risk of imminent sexual abuse, [BOP employees] shall take immediate action to protect the inmate."[4]

22.    Upon receiving a report of inmate sexual abuse, the facility is required to report it to a designated internal investigator[5] and conduct an administrative or criminal investigation.[6] A criminal investigation is required for all allegations of inmate sexual abuse, "unless the allegation does not involve potentially criminal behavior."[7] All such referrals must be documented.[8]

23.    Given the high risk for retaliation against a reporter or victim, the BOP is required to "protect all inmates and staff who report sexual abuse or sexual harassment or cooperate with sexual abuse or sexual harassment investigations from retaliation by other inmates or staff and shall designate which staff members or departments are charged with monitoring retaliation."[9] A prison's PREA compliance manager must monitor an inmate sexual abuse victim for 90 days after a report of abuse is filed to ensure that he or she is not retaliated against by prison staff.[10]

24.    The BOP must also provide ongoing access to mental healthcare to all inmates who have been victimized by sexual abuse while detained in the facility.[11]

25.    The BOP is required to train every employee who may have contact with inmates to comply with the above PREA regulations and must "document, through employee signature or electronic verification, that employees understand

---

[4] *Id.* § 115.62
[5] *Id.* § 115.61(e)
[6] *Id.* § 115.22(a); *see also Id.* § 115.71
[7] *Id.* § 115.22(b)
[8] *Id.*
[9] *Id.* § 115.67(a).
[10] 28 C.F.R. § 115.67(c); BOP Program Statement No. 5324.11, at 44 (Jan. 6, 2014)
[11] *Id.* § 115.83(a), (b), (h).

the training they have received."[12] In addition to this general training, specialized training is required for sexual abuse investigators.[13]

26.     Where an investigation finds that a staff member has engaged in sexual abuse, the presumptive disciplinary sanction is termination, and some form of discipline is required.[14]

27.     Finally, all documentation relating to an allegation of inmate sexual abuse must be maintained[15] and securely retained for at least ten years after the date of initial collection.[16]

28.     Defendants repeatedly violated these PREA regulations.

**B. Defendant ALEXANDER and BALTIERRA routinely subjected Plaintiff to sexual abuse**

29.     Plaintiff arrived at FCI Dublin in approximately January of 2022. In approximately September of 2022, Plaintiff hurt her tailbone while working in the commissary warehouse.

30.     Plaintiff went to the medical room for treatment and was seen by TDY (temporary duty) medical employee ALEXANDER.

31.     ALEXANDER told Plaintiff to lay down on the bed and then told male Correctional Officer ("CO") BALTIERRA to stand by the door and make sure no inmates walked by.

32.     While Plaintiff was laying on her stomach, ALEXANDER began touching her spine.  Without asking Plaintiff's permission, ALEXANDER then pulled Plaintiff underwear down all the way past her buttocks. ALEXANDER continued touching Plaintiff buttocks while she screamed. He also touched in between her inner thighs. No other female medical assistant was asked or required to chaperone or assist with the visit.

---

[12] *Id.* § 115.31.
[13] *Id.* § 115.34.
[14] *Id.* § 115.76.
[15] *Id.* § 115.87(a), (d).
[16] *Id.* § 115.89(a), (d).

33.     Plaintiff felt confused about why ALEXANDER pulled her underwear down and why he was touching her in an area that she did not need care.

34.     At first, Plaintiff did not report what happened because she feared being placed in the solitary housing unit (SHU).

35.     However, a few days later, she reported the situation to SIA Lieutenant Putnam, but nothing occurred.

36.     ALEXANDER and BALTIERRA acted in concert to commit sexual abuse against Plaintiff.

37.     ALEXANDER and BALTIERRA were able to sexually abuse Plaintiff through their position of power and through active and passive coercion.

38.     ALEXANDER and BALTIERRA'S conduct are an example of some of the cruel and unusual punishment that Plaintiff endured at FCI Dublin.

**C. FCI Dublin is known for its culture of tolerating sexual misconduct**

39.     Based on information and belief, throughout the last three decades, the United States has repeatedly ignored incidents of sexual misconduct at FCI Dublin. Currently, six employees have been indicted by the Department of Justice for sexual misconduct, five have pled guilty or been convicted, and nine other employees are on administrative leave pending investigation – the most in U.S. history of the Bureau of Prisons. Twenty-five total were under investigation as of May 2022.[17] The following examples are just a fraction of the magnitude of sexual misconduct and violence that transpired at FCI Dublin:

- In 1996, BOP officers took three female inmates from FCI Dublin to a male unit, opened their cell doors, and allowed male inmates to rape them.

---

[17] See Lisa Fernandez, 25 Dublin prison employees under investigation for sex, drug, lying abuses, KTVU (May 5, 2022), https://www.ktvu.com/news/25-dublin-prison-employees-under-investigation-for-sex-drug-lying-abuses.

- In the late 1990's and early 2000's, four male BOP employees were either convicted or pled guilty to sexually abusing female inmates at FCI Dublin.

- According to the U.S. Senate Report,[18] in the early 2010's, approximately a dozen Dublin employees were removed for their sexual abuse of inmates, "including one who videotaped himself having sex with inmates and stored those tapes in a prison locker. None were arrested."

- In 2019, an FCI inmate, Victoria Peterson, filed a suit against Officer William Martinez for abusing his power and using excessive force to have sex with her. She also sued the warden at the time, Wiley Jenkins, for failing to take disciplinary action against Martinez and allowing him to continue working at FCI Dublin.

- In 2019, inmate L.I. filed a claim against former FCI Dublin chaplain James Highhouse for sexual assault. Highhouse started having unwanted physical contact with L.I. in May of 2018, and although he was ultimately charged with abuse of L.I., prosecutors said he engaged in predatory conduct with at least six women from 2014 to 2019. Highhouse pleaded guilty and was sentenced to seven years in prison.

- Between approximately June of 2020 and September of 2020, inmate A.R. witnessed Klinger's sexual relationship with another inmate. She witnessed Klinger take women into a hidden areas to have sex with him. Klinger and CO Jaime Perez spoke with sexually explicit language toward A.R. CO Perez would bump up against her and grab her breasts. Officer Perez also took photos of A.R.

---

[18] JON OSSOFF & RON JOHNSON, S. REP., SEXUAL ABUSE OF FEMALE INMATES IN FEDERAL PRISONS (2022) (released in conjunction with the permanent subcomm. on investigations December 13, 2022 hearing).

THE PRIDE
LAW FIRM

- Between approximately August 2020 and November 2020, inmate D.V. was pressured into an ongoing sexual relationship with FCI Dublin Correctional Officer Enrique Chavez. CO Chavez kissed her, touched her bare breasts and vagina, and had D.V. touch his penis. CO Chavez was known to bring inmates into the kitchen closet for "meetings."

- In 2021, CO Chavez sexually harassed another inmate, J.C., while was working in the kitchen. CO Chavez would brush his erect penis up against J.C. and said "look, it's hard for you." CO Chavez was charged with abusive sexual contact of a prisoner in violation of 18 U.S.C. § 2244(a)(4). He pled guilty to the conduct and was sentenced to 20 months in prison.

- Another inmate, A.J., suffered sexual abuse at FCI Dublin between approximately September 2021 and May of 2022. When A.J. arrived, Paramedic Fraser Cohen grabbed her breasts with no chaperone. Later throughout her incarceration, CO Nicholas Ramos consistently watched her in the shower, and both CO Ramos and CO Phillips made her strip, cough, and squat for cavity searches.

- From April through October 2020, Klinger manipulated inmate M.R. into performing oral sex and engaging in forced sexual intercourse.

- Saucedo watched inmate A.J. in the shower on multiple occasions. Saucedo ripped open the shower curtain while inmate L.C. was showering, causing her to fall over so he could see her naked body. Saucedo also sexually harassed L.C. by making sexual noises at her and squirting shampoo on her clothing, mimicking ejaculation. Additionally, inmate L.A. was sexually harassed by Saucedo when he forced her to bend over in front of him.

- Inmate D.S. was forced to engage in oral sex with nurse Jeff Wilson. Jeff Wilson also forced inmate L.A. to show him her breasts.
- Another inmate went to TDY (temporary duty) medical employee Jay Alexander (exact name unknown) for medical treatment on her back, and he pulled her underwear down and touched her buttocks and in between her inner thighs.
- Inmate G.M. was preyed upon by Disciplinary Hearing Officer (DHO) David Perez for over three years. David Perez would "make out" with G.M., touch her breasts, caress her, and make her believe he was her boyfriend. When G.M. was on probation, David Perez met up with her and had her touch his genitals.
- Another kitchen foreman, O'Connor (full name unknown) touched inmate N.P.'s buttocks and brushed his hand over her chest.
- CO Jones would tell inmate J.C. to "suck his dick" and he would tell her to "Get on your knees." CO Jones would grab his genitalia and tell her to "look."

40.    Upon information and belief, at least 25 FCI Dublin employees, including those who courageously reported and/or acted to prevent instances of sexual violence, have been reassigned to other prisons. This reassignment got the attention of Congresswoman Jackie Speier, who wrote a letter to the new Director of the Federal Bureau of Prisons, Colette Peters, requesting information about FCI Dublin's "culture of rampant sexual misconduct and subsequent cover-ups."[19]

41.    In December 2022, the United States Senate reported on the Permanent Subcommittee on Investigations findings from its investigation into sexual abuse of female prisoners in custody of the BOP. The report found that in at least four BOP facilities (FCI Dublin being one of them), multiple women endured ongoing sexual

---

[19] Fox2KTVU Reporter Lisa Fernandez: https://www.ktvu.com/news/dublin-prison-guard-says-she-was-forced-out-for-reporting-abuse

abuse for months or years. The report's conclusion stated, "BOP failed to detect or prevent sexual abuse of incarcerated women by male BOP employees. The agency's poor implementation of the audit program and reporting mechanisms required by PREA allowed serious, repeated sexual abuse in at least four facilities to go undetected. BOP's internal affairs practices have failed to hold employees accountable, and multiple admitted sexual abusers were not criminally prosecuted as a result. Further, for a decade, BOP failed to respond to this abuse or implement agency-wide reforms. Moving forward, BOP should consider the Subcommittee's findings as it works to implement changes to how it handles sexual abuse of female prisoners by male BOP employees."[20]

42.     Correctional officers Nicholas Ramos and Saucedo were placed on leave in March of 2022 for sexual misconduct allegations. Correctional officer Nicholas Ramos committed suicide on August 21, 2022.

43.     Former Assistant Warden, Ray J. Garcia was found guilty of three counts of having sexual contact with an incarcerated person, four counts of abusive sexual contact and one count of lying to the FBI. Garcia was sentenced to 5 years and 10 months in prison. Former CO Ross Klinger pled guilty to federal criminal charges for Sexual Abuse of a Ward (18 U.S.C. § 2243(b)) stemming out of his conduct against two other inmates and he is awaiting sentencing. CO John Bellhouse was found guilty of sexually abusing female inmates. His sentencing hearing is set for later this year.  Additionally, in March of 2022, COs Saucedo and Nicholas Ramos were placed on leave as a result of sexual misconduct allegations.

44.     Defendant United States failed to provide the sexual abuse victims with counseling services or victim advocates. The victims were retaliated against with interviews and examinations after filing their Federal Tort Claims. As a result of reporting the misconduct, the victims were put in the Solitary Housing Unit

---

[20] JON OSSOF & RON JOHNSON, S.REP., SEXUAL ABUSE OF FEMALE INMATES IN FEDERAL PRISONS (2022) (released in conjunction with the Permanent Subcomm. on Investigations December 13, 2022 hearing).

(SHU), received daily room tosses, and were placed on lock downs. The victims also had their phone calls and visitations taken away, their legal mail was read, and their legal phone calls were monitored.

## CLAIMS FOR RELIEF

### CLAIM ONE

### EIGHTH AMENDMENT, CRUEL AND UNUSUAL PUNISHMENT – SEXUAL ABUSE

**(Against ALEXANDER and DOES 1-25, inclusive, in their individual capacities)**

45.    Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

46.    Plaintiff brings this claim under the Cruel and Unusual Punishment Clause of the Eighth Amendment to the U.S. Constitution against ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, in their individual capacities.

47.    At all material times, against ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, were federal employees of the BOP at FCI Dublin, acting under the color of federal authority with respect to the allegations in this complaint.

48.    ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, violated Plaintiff's right to be free from cruel and unusual punishment by repeatedly sexually abusing her while she was incarcerated as a minimum-security inmate at FCI Dublin.

49.    ALEXANDER, BALTIERRA, and DOES 1-25's, inclusive, sexual abuse of Plaintiff occurred under coercive circumstances.

50.    By intentionally subjecting Plaintiff to sexual acts, ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

51.     The inhumane conditions of confinement caused by ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, repeated sexual abuse caused Plaintiff severe physical, mental, and emotional harm.

52.     ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, acted with malice and oppression, and their conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling Plaintiff to punitive damages.

53.     Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

**CLAIM TWO**

**GENDER VIOLENCE (Cal. Civ. Code § 52.4)**

**(Against ALEXANDER and DOES 1-25, inclusive, in their individual capacities)**

54.     Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

55.     Plaintiff brings this claim for gender violence under California Civil Code § 52.4 against ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, in their individual capacities.

56.     Under California statute, any person subjected to gender violence may bring a civil action for damages against the responsible party. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

57.     ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, discriminated against Plaintiff based on her female gender when they repeatedly sexually abused her, by physically subjecting her to sexual acts, under the coercive conditions that were present between them.

58.    ALEXANDER, BALTIERRA, and DOES 1-25's, inclusive, actions occurred outside the course and scope of their employment. Their actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that they could not have been making a policy judgment in their decision to sexually abuse Plaintiff.

59.    By repeatedly subjecting Plaintiff to sexual acts, ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

60.    ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, acted with malice and oppression and their conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

61.    Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

62.    Plaintiff also seeks attorneys' fees and costs, as expressly authorized by statute.

## CLAIM THREE

### SEXUAL ASSAULT (Cal. Civ. Code § 1708.5)

**(Against ALEXANDER and DOES 1-25, inclusive, in their individual capacities)**

63.    Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

64.    Plaintiff brings this claim for sexual assault under California Civil Code § 1708.5 against ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, in their individual capacities.

65.     ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, violated Plaintiff's statutory right to be free from sexual assault by repeatedly sexually abusing her while she was incarcerated as a minimum-security inmate at FCI Dublin.

66.     ALEXANDER, BALTIERRA, and DOES 1-25's, inclusive, sexual abuse of Plaintiff occurred under coercive circumstances.

67.     For these reasons, ALEXANDER, BALTIERRA, and DOES 1-25's, inclusive, sexual abuse of Plaintiff, an inmate in the custody of their employer, was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

68.     Given the deeply offensive nature of these sexual acts and lack of any possible penological justification for these sexual acts, ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, must have subjected Plaintiff to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff's person.

69.     By intentionally subjecting Plaintiff to sexual acts, ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

70.     ALEXANDER, BALTIERRA, and DOES 1-25's, inclusive, actions occurred outside the course and scope of their employment. Their actions and judgment in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that they could not have been making a policy judgment in their decision to sexually abuse Plaintiff.

71.     ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

72.     ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, acted with malice and oppression, and their conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

73.     Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

## CLAIM FOUR

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (California common law)

### (Against ALEXANDER and DOES 1-25, inclusive, in their individual capacities)

74.     Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

75.     Plaintiff brings this claim for intentional infliction of emotional distress under California common law against ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, in their individual capacities.

76.     ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, engaged in outrageous conduct by repeatedly subjecting Plaintiff to sexual acts while she was incarcerated as an inmate in their employer's custody. ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, abused their authority over Plaintiff and their power to affect her interests in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

77.     ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, sexual abuse caused Plaintiff to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so substantial and

enduring that no reasonable person in a civilized society should be expected to endure it.

78.    ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, intended to cause Plaintiff this emotional distress because he knew that emotional distress was certain to result from their sexual abuse of an inmate.

79.    ALEXANDER, BALTIERRA, and DOES 1-25's, inclusive, actions occurred outside the course and scope of their employment. Their actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that they could not have been making a policy judgment in their decision to sexually abuse Plaintiff.

80.    ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, acted with malice and oppression, entitling Plaintiff to punitive damages.

81.    Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

## CLAIM FIVE

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (California common law)

### (Against ALEXANDER and DOES 1-25, inclusive, in their individual capacities)

82.    Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

83.    Plaintiff brings this claim for negligent infliction of emotional distress under California common law against ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, in their individual capacities.

84. ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, had a special and heightened duty of care to Plaintiff as her jailer that required them to protect her against reasonably foreseeable harm, emotional harm, and physical harm including from sexual abuse. PREA regulations and BOP policy prohibiting sexual abuse confirm this special and heightened duty.

85. Alternatively, ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, had a general duty of care with respect to Plaintiff.

86. ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, engaged in negligent conduct and in a willful violation of statutory standards. On multiple occasions, ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, breached their duty of care and the PREA regulations by purposefully and willingly subjecting Plaintiff to sexual acts. ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, breach of their duty of care and willful violations of statutory standards were directed at Plaintiff.

87. By repeatedly subjecting Plaintiff to sexual acts, ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, proximately caused her to suffer, and to continue to suffer, serious and severe emotional distress.

88. Plaintiff's emotional reactions are not an abnormal response to her sexual abuse. A reasonable person would be unable to cope with the mental distress caused by being sexually abused by a BOP employee who had a duty to protect her from such abuse. No reasonable person in a civilized society should be expected to endure that kind of mental distress.

89. ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, actions occurred outside the course and scope of their employment. Their actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that they could not have been making a policy judgment in their decision to sexually touch Plaintiff.

90.     ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, acted with malice and oppression, and their conduct constitutes a reckless or callous disregard of Plaintiff rights, entitling her to punitive damages.

91.     Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

## CLAIM SIX

### BATTERY (California common law)

### (Against ALEXANDER and DOES 1-25, inclusive, in their individual capacities)

92.     Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

93.     Plaintiff brings this claim for battery under California common law against ALEXANDER and DOES 1-25, inclusive, in their individual capacity.

94.      ALEXANDER and DOES 1-25, inclusive, committed battery against Plaintiff by repeatedly sexually abusing her while she was incarcerated as a minimum-security inmate at FCI Dublin.

95.      ALEXANDER and DOES 1-25's, inclusive, sexual abuse of Plaintiff occurred under coercive circumstances.

96.     For these reasons ALEXANDER and DOES 1-25's, inclusive, sexual abuse of Plaintiff, an inmate in the custody of their employer, was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

97.     Given the deeply offensive nature of these sexual acts and lack of any possible penological justification for these sexual acts ALEXANDER and DOES 1-

25, inclusive, must have subjected Plaintiff to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff's person.

98.   By intentionally subjecting Plaintiff to sexual acts ALEXANDER and DOES 1-25, inclusive, acted maliciously in a manner that is deeply offensive to human dignity and void of any penological justification.

99.   ALEXANDER and DOES 1-25, inclusive, actions occurred outside the course and scope of his employment. Their actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that they could not have been making a policy judgment in his decision to sexually abuse Plaintiff.

100.   By repeatedly subjecting Plaintiff to sexual acts, ALEXANDER and DOES 1-25, inclusive, caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

101.   ALEXANDER and DOES 1-25, inclusive, acted with malice and oppression, and his conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

102.   Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

**FEDERAL TORT CLAIMS ACT ADMINISTRATIVE EXHAUSTION**

103.   Claims SEVEN and EIGHT, below, are asserted against the United States.

104.   Plaintiff has exhausted these claims against the United States under the FTCA.

105.   Plaintiff submitted a "Claim for Damage Injury, or Death" to the BOP for "permanent injuries, mental anguish, embarrassment, humiliation, pain, distress, and damages" as a PREA victim involving staff at FCI Dublin in the sum of $5,000,000.00.

106.   A true and correct copy of Plaintiff's FTCA claim is attached hereto as **Exhibit A**.

107.   The BOP received her administrative claim on November 29, 2022.

108.   A true and correct copy of the BOP's acknowledgment is attached hereto as **Exhibit B**.

109.   By May 29, 2023, six months after the BOP received Plaintiff's administrative claim, the BOP has neither accepted nor rejected the claims. Pursuant to 28 U.S.C. § 2675(a), Plaintiff elects to consider this failure to act as a final denial of her claim.

**CLAIM SEVEN**

**NEGLIGENCE (FTCA, California common law)**

**(Against the United States)**

110.   Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

111.   Plaintiff brings this claim against the United States under the FTCA based on the actions and/or omissions of United States, ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, taken while working at FCI Dublin in their capacities as employees of the BOP and acting within the scope of their employment, with the permission and consent of the United States.

112.   At all material times, Plaintiff was an inmate in the custody of the BOP, a federal agency of the United States in possession and control of FCI Dublin.

113.   **Duty**. United States, ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, had a custodial duty, as well as a mandatory statutory obligation under PREA regulations and BOP policy, to protect inmates incarcerated by the United

States from foreseeable harm, including, but not limited to, harm from sexual abuse.

114.   The BOP's Personal Conduct rules for staff disallow any sexual activity with an inmate, and state that an employee may not allow another person to engage in such behavior. It explicitly states that there is no such thing as consensual sex between staff and inmates.

115.   Alternatively, United States, ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, had a general duty of care to Plaintiff.

116.   ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, sexual abuse of Plaintiff was reasonably foreseeable to the United States because ALEXANDER, BALTIERRA, and DOES 1-25's, inclusive, conduct made it obvious they were sexually abusing Plaintiff.

117.   **Breach of duty—inadequate supervision**. The United States failed to supervise and operate FCI Dublin in a manner that would have prevented ALEXANDER, BALTIERRA, and DOES 1-25's, inclusive, ongoing sexual abuse of Plaintiff.

118.   The United States did not take reasonable, available measures to abate the risk of sexual abuse to Plaintiff, and to guarantee her safety, even though a reasonable administrator would have complied with PREA regulations regarding proper prison operations, including adequately monitoring work programming and correctional officer assignments.

119.   ALEXANDER, BALTIERRA, and DOES 1-25's, inclusive, sexual abuse of Plaintiff occurred as the direct and proximate result of the supervisory negligence of the United States.

120.   **Injuries and relief sought**. Plaintiff suffered a physical violation, a violation of her liberty interest in being free from sexual abuse, injury from being denied freedom of movement and programming, and severe mental and emotional

anxiety and distress and will continue to suffer severe mental and emotional anxiety and distress in the future.

121.   Plaintiff seeks the following relief for her injuries: non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity.

## CLAIM EIGHT

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (FTCA, California law)

### (Against the United States)

122.   Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

123.   Plaintiff brings this claim against the United States under the FTCA based on the actions and/or omissions of United States, ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, which were taken while working at FCI Dublin in their capacity as an employee of the BOP and acting within the scope of their employment, with United States' permission and consent.

124.   At all material times, Plaintiff was an inmate in the custody of the BOP, a federal agency of the United States in possession and control of FCI Dublin.

125.   **Duty**. United States, ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, had a custodial duty, as well as a mandatory statutory obligation under PREA regulations and BOP policy, to protect inmates incarcerated by the United States from foreseeable harm, including, but not limited to, harm from sexual abuse.

126.   **Breach of duty—inadequate supervision**. The United States failed to supervise and operate FCI Dublin in a manner that would have prevented ALEXANDER, BALTIERRA, and DOES 1-25's, inclusive, ongoing sexual abuse of Plaintiff.

127.   The United States did not take reasonable, available measures to abate the risk of sexual abuse to Plaintiff, and to guarantee her safety, even though a reasonable administrator would have complied with PREA regulations regarding proper prison operations, including adequately monitoring work programming and correctional officer assignments.

128.   ALEXANDER, BALTIERRA, and DOES 1-25's, inclusive, sexual abuse of Plaintiff occurred as the direct and proximate result of the supervisory negligence of the United States.

129.   **Injuries and relief sought**. United States, ALEXANDER, BALTIERRA, and DOES 1-25, inclusive, actions and omissions caused Plaintiff to suffer, and continue to suffer, serious and severe emotional distress, including fear, depression, and anxiety, because of being repeatedly sexually abused.

130.   Plaintiff's emotional reaction was not an abnormal response to her sexual abuse. A reasonable person would be unable to cope with the emotional distress caused by being sexually abused by a correctional officer, who had a duty to protect her from such abuse. Plaintiff's distress was of such a substantial and enduring quality that no reasonable person in a civilized society should be expected to endure it.

131.   By reason of the United States' negligent infliction of emotional distress Plaintiff has suffered severe emotional distress and will continue to suffer severe mental and emotional anxiety and distress.

132.   Plaintiff seeks nominal and compensatory damages for these violations.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all claims so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court grant the following relief:

1.       Nominal damages in an amount to be determined at trial;

2.  Compensatory damages for injuries caused by a violation of her constitutional rights and personal dignity, physical injury, pain, discomfort, fears, anxiety, and other mental and emotional distress suffered by Plaintiff and for similar suffering reasonably certain to be experienced in the future, in an amount to be determined at trial;

3.  Punitive damages for malice, oppression, and reckless and callous disregard of Plaintiff's rights;

4.  An award to Plaintiff of reasonable costs; and

5.  An award to Plaintiff of reasonable attorneys' fees pursuant to 28 U.S.C. § 2678 and Cal. Civ. Code § 52.4; and

6.  Such other and further relief as the Court may deem fit and proper.

Respectfully Submitted,

Dated: July 26, 2023

**THE PRIDE LAW FIRM**

/s/ Jessica K. Pride

Jessica K. Pride
Email: jpride@pridelawfirm.com
Attorneys for Plaintiff